2000 UT App 295

**STATE of Utah, Plaintiff and Appellee,**

v.

**Darren James TUCKETT, Defendant and Appellant.**

**No. 990734–CA.**

Court of Appeals of Utah.

Nov. 2, 2000.

Margaret P. Lindsay, Aldrich, Nelson, Weight & Esplin, Provo, for Appellant.

Jan Graham, Atty. Gen., and J. Frederic Voros, Jr., Asst. Atty. Gen., Salt Lake City, for Appellee.

Before GREENWOOD, P.J., and BENCH, THORNE, J.

OPINION

BENCH, Judge:

¶ 1 Appellant Darren James Tuckett appeals from a conviction of homicide by assault, a third degree felony, in violation of

Utah Code Ann. § 76–5–209 (1999). We affirm.

## BACKGROUND

¶ 2 On November 15, 1998, Tuckett went to see Greg Alvey, who was staying with the Openshaws. Tuckett began pounding on the kitchen door and yelling. Ardella Openshaw and her daughter, Cara, unlocked the door and let Tuckett in. Tuckett requested to speak to Alvey, but Ardella asked Tuckett to leave because she "could tell that he had been drinking or doping or something." Tuckett refused to leave.

¶ 3 At about that time, Ardella's son, Kirk, who had been friends with Tuckett for many years, entered the kitchen and told Tuckett to leave. Tuckett again refused to leave and Kirk went over to the landing where Tuckett was standing and tried to "shoo" him out of the door with his hand. Kirk was standing with one foot on the landing and the other foot at the top of a flight of stairs. As Kirk attempted to get Tuckett to leave, Tuckett pushed him backwards, causing him to fall down the flight of stairs. Kirk landed directly on the concrete floor below and died from the impact.

¶ 4 At trial, Tuckett argued that he acted in self-defense. *See* Utah Code Ann. § 76–2–402 (1999). He contended that Kirk was the aggressor, and that Kirk told him, "if you don't get the hell out of the house, I'll kill you." He claimed that Kirk then ran across the kitchen and started attacking him. According to Tuckett, Kirk pinned him in the corner, wrapped his hands around his throat and choked him. When it got to the point that he had difficulty breathing, Tuckett pushed Kirk down the stairs.

¶ 5 Among the many jury instructions given at trial were instruction number eight, which set forth the relevant elements of criminal trespass, and instruction number eleven, which stated: "You are instructed that if a person is trespassing on someone else's property, he is still entitled to use force to defend himself if he reasonably believes force is necessary to prevent death or serious bodily injury." Tuckett objected to both instructions. Further, in its closing argument,

the State responded to one of Tuckett's arguments that the prosecution could not prove that he intended to kill Kirk. The State indicated that some of the facts may support an argument that Tuckett intentionally caused Kirk's death, but that the State gave Tuckett "the benefit of that doubt already" and charged him with homicide by assault and not murder.

¶ 6 The jury subsequently convicted Tuckett of homicide by assault and sentenced him to a term of zero-to-five years imprisonment and restitution. This appeal followed.

## ISSUES AND STANDARD OF REVIEW

■ ¶ 7 First, we must determine whether the trial court properly instructed the jury on the law of self-defense. "The standard of review for jury instructions to which counsel has objected is correctness." *State v. Bryant*, 965 P.2d 539, 544 (Utah Ct.App. 1998).

■ ¶ 8 Second, we must determine whether the State committed prosecutorial misconduct by suggesting in its closing that the facts may have supported a higher charge, but that the State gave Tuckett the benefit of the doubt as to whether he intended to kill Kirk Openshaw by charging him only with homicide by assault and not murder. Tuckett asserts that we review this under a plain error standard. To establish plain error, Tuckett must demonstrate that (1) an error exists, (2) the error should have been obvious to the trial court, and (3) the error prejudiced him. *See State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993).

## ANALYSIS

### 1. Jury Instructions

■ ¶ 9 Tuckett first contends that the trial court erred in instructing the jury on self-defense. He argues that jury instruction number eleven conflicts with the general self-defense statute in Utah Code Ann. § 76–2–402 (1999) by restricting a trespasser's right to self-defense to situations where the trespasser reasonably believes force is necessary to prevent death or serious bodily injury. He also argues that jury instruction number

eight, setting forth the elements of criminal trespass, was irrelevant to the charge of homicide by assault and confused the jury. "This court will affirm when the instructions, taken as a whole, fairly tender the case to the jury [even where] one or more of the instructions, standing alone, are not as full or accurate as they might have been." *State v. Garrett*, 849 P.2d 578, 580 (Utah Ct.App. 1993) (internal quotations omitted) (alteration in original).

¶ 10 Tuckett's position that section 76–2–402 "does not limit the ability of an individual to defend himself solely because he may be trespassing" comes from an incomplete reading of the statute. The statute provides, in relevant part, that "[a] person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that force is necessary to defend himself or a third person *against such other's imminent use of unlawful force.*" Utah Code Ann. § 76–2–402(1) (1999) (emphasis added). This language dealing with "unlawful force" is conspicuously absent from Tuckett's brief. Moreover, the statute provides that a person has no duty to retreat from the force or threatened force if that person is in a place where he has "lawfully entered or remained." *Id.* § 76–2–402(3). Thus, contrary to Tuckett's argument, the statute does not only require that he reasonably believe force is necessary to defend himself, but also: (1) that he retreat if he is not in a place where he has lawfully remained; and (2) that the other's imminent use of force be unlawful. *See id.* § 76–2–402.

¶ 11 The trial court therefore correctly gave jury instruction number eight, which stated the elements of criminal trespass, because the jury had to determine whether Tuckett had lawfully remained at the Openshaws' house. That determination would then aid the jury in deciding whether Tuckett had a duty to retreat. In addition, the jury had to determine whether Openshaw's use of force in attempting to remove Tuckett from his home was lawful.

¶ 12 A homeowner is "justified in using force against another when and to the extent that he reasonably believes that the force is necessary to prevent or terminate the other's unlawful entry into or attack upon his habitation. . . ." *Id.* § 76–2–405(1) (1999). Some limited circumstances allow a homeowner to use "force which is intended or likely to cause death or serious bodily injury"; however, those circumstances do not apply here. *See id.* § 76–2–405(1)(a) & (b). Thus, in this case, Openshaw could use reasonable non-deadly force to remove Tuckett from his home.

¶ 13 Upon refusing to leave when asked, Tuckett became a trespasser who had a duty to retreat. Jury instruction number eleven provided that Tuckett, as a trespasser, could use force to defend himself against any use of force by Openshaw that would have caused death or serious bodily injury. That was all Tuckett was legally entitled to under the applicable statutes. In fact, the State could have requested an instruction on Tuckett's duty to retreat, as explained in Utah Code Ann. § 76–2–402(3). The absence of a retreat instruction may have prejudiced the State, but certainly did not prejudice Tuckett. Simply put, the instructions read together may have provided Tuckett with more latitude to defend himself than allowed by statute, and the jury still convicted him of homicide by assault.[1] Thus, the case was fairly tendered to the jury.

### 2. Prosecutorial Misconduct

¶ 14 Tuckett also contends that statements the prosecutor made in closing argument amount to prosecutorial misconduct. "To prevail on this claim, defendant must show that the remarks 'called to the jurors' attention matters which they would not be justified in considering in reaching a verdict' and, if so, that the remarks were harmful." *State v. Bakalov*, 1999 UT 45, ¶ 56, 979 P.2d 799 (citation omitted). In addition, because Tuckett urges us to consider this under a plain error standard, we must determine whether the error in the com-

1. Had the jury believed Tuckett's version of the events and theory of self-defense, it would have acquitted him under the instructions given. The jury therefore did not believe that Openshaw used deadly force, whether lawful or not, in his attempt to remove Tuckett.

ments was "obvious and substantially prejudicial." *Id.* In making a determination as to whether the prosecutor's comments amount to plain error, "we will consider the comments both in context of the arguments advanced by both sides as well as in the context of all the evidence." *Id.* Moreover, we have observed that " 'counsel for each side has considerable latitude [in closing arguments].' " *Id.* (citation omitted) (alteration in original).

¶ 15 Specifically, Tuckett argues that the prosecutor improperly noted that the facts may have supported a charge that Tuckett intentionally caused Openshaw's death, but that the State had "given the defendant the benefit of that doubt already and we have charged him with homicide by assault and not murder." Tuckett argues that these comments were irrelevant and improperly conveyed the message to the jury that they "did not need to consider the evidence themselves to determine the existence of reasonable doubt." Tuckett now asks for a new trial.

¶ 16 We are not persuaded that the prosecutor's remarks constitute plain error. First, the issue of a more serious crime was first mentioned by the defense. Tuckett argued in his opening statement that he did not intentionally cause Openshaw's death, and because of that, the State did not charge him with murder. In response, "[t]he prosecutor was entitled to rebut the defendant's remarks" by simply acknowledging at closing that the State did not claim Tuckett intentionally caused Openshaw's death, but that the argument could be made that some of the facts may have supported a higher charge. *State v. Bowman,* 945 P.2d 153, 157 (Utah Ct.App.1997). Further, Tuckett had the last word on the subject by stating that even the State knew it could not prove that Tuckett specifically intended to push Openshaw down the stairs. However, even if the prosecutor's comments regarding a higher charge were in

error, Tuckett has not demonstrated that it was plain error, i.e., that he suffered prejudice.

¶ 17 As for the comment that the State gave Tuckett the "benefit of that doubt," it could not reasonably be understood to mean that the jury was no longer required to determine whether they harbored reasonable doubt that Tuckett was guilty of homicide by assault. In fact, the jury was properly instructed on reasonable doubt, as it was defined in instruction number four and extensively incorporated into six other instructions. In short, we agree with the State that no "reasonable juror could have considered this obligation to have been abrogated by the prosecutor's charging decision." Therefore, because Tuckett suffered no prejudice from any alleged prosecutorial misconduct, there was no plain error.

## CONCLUSION

¶ 18 Jury instruction number eight was correctly given because it was relevant to Tuckett's claim of self-defense. Jury instruction number eleven was also correct as it provided Tuckett with all of the right to self-defense, if not more, that he was entitled to under the applicable statutes. As far as Tuckett is concerned, his case was fairly tendered to the jury. We also find no plain error in the prosecutor's comments at closing argument.

¶ 19 Accordingly, we affirm.

¶ 20 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and WILLIAM A. THORNE Jr., Judge.