2004 UT 99

**STATE of Utah, Plaintiff and Appellee,**

v.

**Rehan HASSAN, Defendant and Appellant.**

**No. 20020885.**

Supreme Court of Utah.

Nov. 30, 2004.

Rehearing Denied Dec. 14, 2004.

Mark L. Shurtleff, Att'y Gen., Christine F. Soltis, Laura Dupaix, Asst. Att'ys Gen., Paul Parker, Salt Lake City, for plaintiff.

Linda M. Jones, Salt Lake City, for defendant.

WILKINS, Associate Chief Justice:

¶ 1 On May 15, 2000, Rehan Hassan, having waived a jury trial, was convicted in a bench trial of two counts of aggravated burglary and three counts of simple assault. Hassan filed a timely motion for a new trial. Before that motion was heard, Hassan acquired a succession of attorneys, each with brief tenure. Ultimately, Hassan petitioned the trial court to allow him to proceed pro se at the evidentiary hearing on his motion for a new trial. The court granted the petition, Hassan argued the motion, and the motion was denied.

¶ 2 Hassan now petitions this court to reverse the convictions and remand the case for a new trial, or, alternatively, to vacate the trial court's ruling on the new trial motion and remand the case for further proceedings. He provides two separate grounds for his petition. First, he argues that his waiver of a jury trial was defective and that he is therefore entitled to a new trial. Second, he claims that his right to counsel was violated when the court granted his petition to proceed pro se at the evidentiary hearing on his motion for a new trial. We disagree with both arguments and affirm the convictions.

## BACKGROUND .

¶ 3 Rehan Hassan is a Pakistani national residing legally in the United States. He is married to a U.S. citizen and holds an advanced degree. While not his native language, he is proficient in both speaking and writing in English. In 1999, he was charged with multiple counts of aggravated burglary and assault for acts arising out of an altercation that took place at his apartment complex.

¶ 4 During the pretrial phase, Hassan informed the court that he wished to try the case to the bench rather than to a jury. Accordingly, the court conducted a colloquy to ascertain whether Hassan was knowingly and voluntarily waiving his right to a jury trial. Judge Stirba inquired seventeen times during the colloquy whether Hassan wished to relinquish his right to a jury trial and whether he understood the implications of that waiver. She emphasized that a jury conviction would require a unanimous decision of eight jurors, whereas the judge alone would determine guilt or innocence in a bench trial. She inquired as to whether others had pressured Hassan to choose a bench trial. He replied that he had been under no such pressure. She also asked Hassan if he had discussed this decision with his attorney. He answered, under oath, that he had.

¶ 5 After this extensive inquiry, and with the consent of both the prosecution and the defense, Judge Stirba accepted Hassan's waiver. At the conclusion of the bench trial, she found him guilty of two counts of burglary and three counts of simple assault. She then sentenced him to two concurrent terms of not less than five years in prison. Hassan acquired new counsel and filed a motion for a new trial.

¶ 6 On August 2, 2001, Hassan appeared with his attorney before a new trial judge and requested that the hearing on his motion for a new trial be postponed and that his attorney be permitted to withdraw from the case. This was not the first time Hassan had made a similar request: between the time of his conviction and that date, Hassan had acquired the services of a series of attorneys, each of whom was either fired or forced to withdraw from the case. He declared his dissatisfaction with his attorneys, asserting that he had been the victim of open discrimination and had been betrayed by "evil" defense counsel, who would neither let him speak nor follow his instructions. He characterized his attorneys, the prosecution, and Judge Stirba as "enemies of Islam" and "racists."

¶ 7 He informed the court that he would only accept counsel that was of the Islamic faith and that if he were unable to locate such counsel within the next month, he would prefer to represent himself. After granting defense counsel's motion to withdraw, the court postponed the hearing so that Hassan would have time to find acceptable counsel or, in the alternative, prepare himself to proceed on his own. The court explained to Hassan the various disadvantages of self-representation and even attempted to dissuade him from proceeding pro se, but Hassan insisted that he wanted to vindicate his own rights.

¶ 8 At Hassan's next court appearance, a stand-in attorney was present to represent him. Hassan again insisted that he wanted to proceed pro se, citing the interest of time and his superior understanding of the facts and strategy of his case. The court then engaged Hassan in another colloquy before accepting his petition to waive counsel.

¶ 9 After the court rejected his motion for a new trial, Hassan appealed. He now argues that he was denied his right to counsel because his waiver of counsel was not knowing, intelligent, and voluntary. Hassan further argues that his waiver of a jury during the trial phase was defective and that he is therefore entitled to a new trial. He raises both arguments for the first time on appeal.

## STANDARD OF REVIEW

■ ¶ 10 Hassan failed to preserve the issues of the validity of his two waivers in the record and is instead raising them now under the plain error doctrine. Under this doctrine, we will overturn the trial court's rulings only if we find that " '(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for [Hassan].' " *State v. Parker*, 2000 UT 51, ¶ 7, 4 P.3d 778 (Utah 2000) (quoting *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993)).

## ANALYSIS

### I. WAIVER OF JURY TRIAL

■ ¶ 11 Hassan's first contention is that the trial court committed plain error in accepting his waiver of a jury trial. We do not agree.

■ ¶ 12 The right to try one's case to a jury is a jealously guarded privilege under the Constitution. *See Adams v. United States ex rel. McCann*, 317 U.S. 269, 280, 63 S.Ct. 236, 87 L.Ed. 268 (1942). Courts must ensure that such waivers are knowing, voluntary, and intelligent. *Id.* at 277–78, 63 S.Ct. 236. Criminal defendants also have the guaranteed right to select the form of trial they wish. As the United States Supreme Court recognized over half a century ago when it upheld the jury trial waiver of a pro se defendant, since a "trial by jury confers burdens as well as benefits, an accused should be permitted to forego its privileges when his competent judgment counsels him that his interests are safer in the keeping of the judge than of the jury." *Id.* at 278 63 S.Ct. 236.

¶ 13 The question before us now is whether the trial court committed plain error in determining that Hassan knowingly, voluntarily, and intelligently exercised his right to waive a jury trial. Hassan points to supposed deficiencies in the waiver colloquy in arguing that he did not. Because Utah law does not support his argument, he offers case law from other jurisdictions not binding on this court to persuade us that the colloquy

was not properly conducted and that his waiver was defective. Yet even under the very cases he presents, his argument fails. We first explain the rule in this jurisdiction as it pertains to jury waivers.

¶ 14 We look to the totality of the circumstances to determine whether a defendant validly waived his right to a jury trial. *See State v. Moosman,* 794 P.2d 474, 478 (Utah 1990) (without articulating a standard, court looked to all the circumstances in determining validity of waiver). Under this standard, we have generally upheld a trial court's determination that a jury trial waiver was valid. *See State v. Garteiz,* 688 P.2d 487, 488 (Utah 1984) (holding that a four-question colloquy of a non-citizen, non-English speaking defendant was sufficient to find a valid waiver). In fact, we have only found a trial court to have improperly granted a waiver of a jury trial where the prosecutor, in the pro se defendant's absence, petitioned the court for a bench trial. *State v. Cook,* 714 P.2d 296, 297 (Utah 1986).

¶ 15 Ignoring this case law, Hassan instead urges us to follow his interpretation of *United States v. Delgado,* 635 F.2d 889 (7th Cir. 1981). In that case, the Seventh Circuit explained the substance of a waiver colloquy and reversed the defendant's conviction because the colloquy was too sparse under the circumstances. *Id.* at 890. Subsequent case law in the Seventh Circuit, however, has substantially narrowed *Delgado.* In *United States v. Rodriguez,* 888 F.2d 519 (7th Cir. 1989), the Seventh Circuit explained that the *Delgado* warnings "are called for as a matter of prudence," rather than constitutional mandate, and asserted that "[l]esser (even no) warnings do not call into question the sufficiency of the waiver so far as the Constitution is concerned." *Id.* at 527. The Seventh Circuit explained that it is necessary to look to the totality of the circumstances to ascertain whether a defendant's waiver was knowing, intelligent, and voluntary. *See id.* at 528. In fact, under Supreme Court precedent, courts must not automatically reverse a conviction simply because a trial judge did not adhere to a prophylactic rule, such as administering a colloquy. *See id.; see also Bank of Nova Scotia v. United States,* 487

U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).

¶ 16 Neither the existence nor the precise format of a waiver is dispositive to our analysis. Rather, we look to the totality of the circumstances in each case to determine whether a particular defendant validly waived his right to a jury trial. Hassan argues that because Judge Stirba knew that he was concerned that a jury might not be fair to him, she should have specifically explained that the jury would be impartial. Her failure to do so, he argues, renders his waiver invalid. We cannot agree.

¶ 17 Judge Stirba conducted a thorough colloquy, advising Hassan of many implications of his waiver. She was under no obligation to provide an exhaustive explanation of all the consequences of a jury waiver. Her omission of one discrete element of the potential consequences does not change our analysis. Nothing in our case law should have alerted her that accepting Hassan's waiver would be a clear error, or even an error at all.

¶ 18 Furthermore, under a totality of the circumstances analysis, a defendant can validly waive a right to a jury trial even in the absence of a colloquy if other factors indicate that he knowingly, intelligently, and voluntarily waived the right. *See, e.g., Moosman,* 794 P.2d at 479. That being said, we maintain that a colloquy will help judges ascertain whether a defendant meets this standard. Furthermore, conducting the colloquy on the record will allow for efficient and informed appellate review of those waivers. A colloquy is especially useful in ensuring the validity of a waiver when a defendant has limited comprehension of the English language or is unrepresented by counsel. For these reasons, we encourage our judges, particularly in the circumstances just mentioned, to conduct a colloquy before granting a waiver.

¶ 19 We do not, however, require our judges to do so, or to mechanically recite any set of specific inquiries on occasions of jury waiver. We hold that the trial court did not commit error in accepting Hassan's petition to waive a jury trial.

## II. WAIVER OF COUNSEL

¶ 20 We now turn to the issue of whether the court committed error in granting Hassan's petition to proceed pro se in his motion for a new trial. We find that it did not.

¶ 21 Both the federal and Utah Constitutions guarantee to criminal defendants the right to assistance of counsel. *See* U.S. Const. amend. VI.; Utah Const. art. I, § 12. Concomitant with that right is the criminal defendant's guaranteed right to elect to present his own defense. *See* Utah Code Ann. § 77–1–6(1)(a)(1995); *Faretta v. California,* 422 U.S. 806, 818–21, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). It is the solemn duty of the trial court to balance these dual guarantees by ensuring that the defendant is exercising his right to self-representation voluntarily, knowingly, and intelligently. *See State v. Bakalov,* 1999 UT 45, ¶ 15, 979 P.2d 799; *State v. Frampton,* 737 P.2d 183, 187 (Utah 1987).

¶ 22 Pro se defendants may often find themselves at a serious disadvantage in our legal system. As such, trial courts must be assured that a defendant has " 'clearly and unequivocally request[ed]' " the right to proceed pro se. *Bakalov,* 1999 UT 45 at ¶ 16, 979 P.2d 799 (quoting *United States v. McKinley,* 58 F.3d 1475, 1480 (10th Cir. 1995)). In *Frampton,* we recommended that our trial courts conduct, on the record, a colloquy with the defendant wishing to represent himself to ascertain whether the waiver of counsel is knowing and voluntary. 737 P.2d at 187. We provided guidance as to the substance of that colloquy, but were careful to note that the validity of a waiver would turn not on whether the trial judge actually conducted the colloquy, but rather "upon the particular facts and circumstances surrounding each case." *Id.* at 188. Beyond the colloquy, we will "look at any evidence in the record which shows a defendant's actual awareness of the risks of proceeding pro se." *Id.*

¶ 23 When applying these principles to the case at bar, it is clear that the court committed no error in allowing Hassan to proceed pro se. The trial judge actually did conduct a colloquy consistent with the one we suggested in *Frampton.* The judge asked Hassan about his educational background, discovering that he held a master's degree. He asked about Hassan's previous experience with the legal system, his familiarity with the law and with the existence of rules of criminal procedure applicable to his motion. Hassan responded that, though he had not studied the law and was not familiar with our legal system, he was aware of the rules and believed he could follow them. The judge strongly and repeatedly advised Hassan against waiving counsel, but concluded that Hassan had validly asserted his right to represent himself.

¶ 24 When Hassan next appeared before the court, he again petitioned the court to proceed pro se. In the interim between his two appearances, he had retained and then fired defense counsel, filing a complaint against him with the state bar. A conflicts attorney appeared at the hearing to replace Hassan's previous counsel. Hassan, however, refused the assistance of this counsel, preferring to proceed immediately with the hearing. The trial court conducted another *Frampton* colloquy. It emphasized the disadvantages of self-representation, including the questioning of witnesses and the process of testifying on one's own behalf. Hassan insisted that he could present the best defense himself.

¶ 25 Hassan now argues that his waiver was not valid because he was improperly forced to choose between self-representation and postponing the hearing on the motion for a new trial until such time as newly appointed counsel could adequately prepare himself. Hassan argues that these options rendered his choice, essentially, no choice at all. We disagree.

¶ 26 We have previously addressed the issue of the validity of a waiver of counsel in the face of limited options. In *Bakalov,* we held that a defendant who refused to cooperate with his appointed counsel, instead insisting that the court appoint counsel from outside the jurisdiction, could not later argue that he was denied assistance of counsel when he elected to proceed pro se

rather than accept previously appointed counsel. 1999 UT 45 at ¶¶ 18–19, 979 P.2d 799. We have said that forcing a defendant to choose between self-representation and incompetent counsel equates to a denial of the assistance of counsel. *See id.* at ¶ 20. But requiring a defendant to "choose between waiver [of counsel] and another course of action as long as the choice presented to him is not constitutionally offensive" is perfectly permissible. *Id.* at ¶ 17 (alterations in original) (quoting *Wilks v. Israel,* 627 F.2d 32, 35 (7th Cir.1980)).

¶ 27 We find no reason to believe that Hassan was forced into an unconstitutional choice. Hassan's choice was simply between accepting new counsel, with the consequence of postponing the hearing on his motion, and proceeding pro se. There is nothing constitutionally repugnant in those alternatives.

¶ 28 Hassan declared his wish to proceed forthwith and pro se, and the court conducted a full *Frampton* colloquy on two separate occasions. There was nothing more the trial court could have done to ensure that Hassan's choice to represent himself was made knowingly, intelligently, and voluntarily. While we acknowledge that a pro se defendant may find himself at a disadvantage in the judicial system, as a matter of constitutional law, trial courts cannot force defendants to accept counsel against their informed and intelligent wishes. To do so would be to "imprison a man in his privileges and call it the Constitution." *Adams v. United States ex. rel. McCann,* 317 U.S. 269, 280, 63 S.Ct. 236 (1942).

¶ 29 The trial court conducted sufficient inquiry into defendant's decision to waive counsel. The record supports a knowing and voluntary waiver. Accordingly, we find that the trial court did not commit error in granting his petition.

## CONCLUSION

¶ 30 We reject Hassan's contention that the trial court improperly accepted his waiver of a jury trial. The trial judge conducted an adequate colloquy to determine that Hassan knowingly, intelligently, and voluntarily exercised his right to select a bench trial over a jury trial. We furthermore reject Hassan's argument that the trial court improperly granted his petition to represent himself in his post trial motion, since the trial court adhered to the guidelines set forth in *Frampton.* We find no error, plain or otherwise, in either instance of waiver. The petitioner's conviction and the trial court's denial of a motion for a new trial are affirmed.

¶ 31 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.