2019 UT App 95

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MIGUEL A. SAGAL,
Appellant.

Opinion
No. 20131170-CA
Filed June 6, 2019

Second District Court, Farmington Department
The Honorable David M. Connors
No. 111701832

Scott L. Wiggins, Attorney for Appellant

Sean D. Reyes and Daniel W. Boyer, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES DAVID N. MORTENSEN and DIANA HAGEN
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Miguel A. Sagal appeals his convictions on six counts of
unlawful sexual activity with a minor. We affirm.

## BACKGROUND

¶2     Sagal was charged with six third-degree felony counts of
unlawful sexual activity with a minor as a result of having
sexual intercourse with two minor females in 2010 and 2011.
Sagal pleaded not guilty to the charges.

¶3 Although a jury trial was initially scheduled, Sagal's counsel filed a Request for Bench Trial shortly before trial. In the Request for Bench Trial, counsel stated that he had advised Sagal "of his right to seek trial by jury and all the rights attendant to such a choice, as well as the rights that he would be waiving by opting for a bench trial." On the day of trial, the trial court questioned counsel regarding Sagal's waiver of his right to a jury trial. The judge stated, "I would just like to have on record that you've had discussion with your client about his . . . right to a jury trial and that he has knowingly and intentionally agreed to go forward in a trial . . . without a jury." Counsel responded, "I have discussed at length with Mr. Sagal, his right to a jury trial, the rights that he will be waiving should he elect to forgo his right to a jury trial and have it tried to the bench."

¶4 Both victims testified at trial. The first victim, K.G., testified that she had sex with Sagal a number of times when she was fourteen years old and he was eighteen years old. After K.G. broke up with Sagal, he began contacting her friend, M.P. M.P. had sex with Sagal three times in the summer of 2011, when she was fourteen years old and he was nineteen years old. On several occasions prior to trial, both victims had denied having sex with Sagal.

¶5 After hearing the evidence, the trial court convicted Sagal of all charges, finding both victims to be credible witnesses and determining that other witnesses corroborated their testimony. The trial court later amended the verdict by reducing the three counts relating to K.G. to class B misdemeanors because Sagal was slightly less than four years older than K.G.

¶6 Following trial, Sagal's mother sought mitigating testimony to undermine the victims' credibility. She obtained an affidavit from a witness, L.S., who stated that M.P. admitted to her that she had lied at trial about having sex with Sagal. When counsel learned of this first potential witness, L.S., he withdrew as Sagal's attorney because Sagal had previously admitted to

counsel that he had engaged in sex with M.P. and counsel felt he could therefore not ethically pursue any investigation into the witness's statements. Following counsel's withdrawal, Sagal's mother obtained an affidavit from a second witness, K.P., who also stated that M.P. had confessed to her that she had lied about having sex with Sagal.

¶7     Sagal appealed his convictions. First, he asserted that the trial court committed plain error by failing to conduct an adequate colloquy to ensure that he had been fully informed of the rights he was waiving by electing a bench trial rather than a jury trial. Second, Sagal asserted that he received ineffective assistance of counsel because counsel did not fully inform him of the rights he was waiving and did not adequately investigate the two potentially exonerating witnesses or move for a new trial.

¶8     This court remanded the case to the trial court pursuant to rule 23B of the Utah Rules of Appellate Procedure, directing the trial court

> to make all findings of fact and enter all conclusions of law necessary to resolve:
>
> (1) whether counsel performed deficiently in advising [Sagal] about his right to a jury trial;
>
> (2) whether [Sagal] was prejudiced by counsel's deficient performance, if any;
>
> (3) whether counsel performed deficiently in not investigating [L.S.] and [K.P.] and for not moving for a new trial based on his investigation; and
>
> (4) whether [Sagal] was prejudiced by counsel's deficient performance, if any.

¶9     At the rule 23B hearing, Sagal and his former counsel provided contradictory testimony regarding when counsel

discussed the bench trial with Sagal and what counsel told him concerning his right to a jury trial. Counsel testified that he "notified [Sagal] of his right to have a jury of impartial individuals who would hear the evidence against him and ultimately decide his guilt or innocence"; that he "told [Sagal] that the Court would instruct the jury of [his] right to remain silent and that the jury could not interpret [Sagal's] silence as an admission of guilt"; and that he "advised [Sagal] that the Court would instruct the jury on proof beyond a reasonable doubt and the presumption of innocence." "He stated that he told [Sagal] that the decision to seek a bench or a jury trial was [his], but that he recommended that [Sagal] elect a bench trial" because counsel was concerned that "a jury would hold [Sagal's] refusal to testify against him" and that "[Sagal] might not have the benefit of a truly impartial jury because of his Hispanic heritage."

¶10 Sagal testified that he did not know anything about the waiver until after counsel had already filed the Request for Bench Trial. He also testified that "[h]e did not know that juries needed to reach unanimous decisions to convict him, or that he would be able to participate in picking the jury. Had he known these things, he asserted he would not have waived his right to a jury trial."

¶11 Determining that Sagal lacked credibility, the trial court "accept[ed counsel's] testimony regarding the events surrounding [Sagal's] waiver of his right to a jury trial." Having heard both individuals' testimony, the trial court found "that [Sagal's] claim that he would not have waived the jury trial had he known that the jury was required to reach a unanimous decision and that he would have been able to participate in the selection of the jurors lacks credibility and is contradicted by his own testimony." The trial court determined that Sagal's own testimony at the rule 23B hearing that he completely trusted his counsel, that he had no prior experience with the criminal justice system, and that he had been taught not to question his elders suggested "that [Sagal] was likely to have agreed with

[counsel's] advice to waive the jury trial regardless of whether [counsel] thoroughly explained every right associated with a jury trial."

¶12   Having assessed the testimony of both Sagal and counsel, the trial court determined that while counsel "could have more thoroughly explained the rights associated with a jury trial to [Sagal], his advice to seek a bench trial was sound trial strategy." The court further determined that Sagal could not show prejudice, because he had "failed to demonstrate that a jury trial would have yielded a more favorable result" and because "even if [counsel] had thoroughly and exhaustively explained all of the rights associated with a jury trial, given [Sagal's] trust in [counsel], [Sagal] would have still waived his right to a jury trial to proceed with the bench trial."

¶13   The court also heard testimony regarding the affidavits from L.S. and K.P. L.S. signed her affidavit on January 29, 2013, asserting that M.P. had confided in her that she had falsely testified about having sex with Sagal. Sagal's mother testified that she gave L.S.'s affidavit to counsel before her son's sentencing, that counsel read the affidavit, and that counsel told her he would present it at sentencing. She claimed that when this did not occur, she confronted counsel and he told her that he would present the affidavit on appeal.

¶14   Counsel testified that he did not learn of the potential new witnesses until approximately three months after sentencing. When counsel learned of them, he withdrew as counsel to give Sagal the opportunity to obtain a new attorney to pursue the witnesses because counsel did not feel he could ethically present the witnesses to the court due to the fact that Sagal had admitted to him that he had sex with M.P. In a letter to Sagal, counsel advised him "to carefully consider whether to volunteer that he had sex with M.P. to his new attorney" and instructed him that "the next course of action would be to identify the friend claiming that M.P. recanted her testimony."

Counsel also testified that he did not see L.S.'s affidavit until after he withdrew from the case.

¶15 The court determined that Sagal's mother's testimony was not credible because counsel would not have advised Sagal in his letter to identify the witness if he already knew who the witness was, because it was unlikely that counsel "would have suggested that he could present on appeal a document that had never been previously offered into evidence," and because Sagal's mother did not mention the allegations when she addressed the court at her son's sentencing.

¶16 Additionally, during the rule 23B hearing, both L.S. and K.P. disavowed their affidavits. The court made the following findings regarding L.S.:

> [L.S.] testified that she knew M.P., but did not know [Sagal] when he reached out to her through Facebook for help in his case. [Sagal] had set up a meeting for [his] mother and a notary public to meet with [L.S.] while she was at [school]. [L.S.] testified that she did not have any information about [Sagal's] case, nor did she provide any information to [Sagal]. When [Sagal's] mother and the notary arrived at [the school], [L.S.] testified they did not let her see the contents of the affidavit. She testified she did not read the affidavit and did not know its contents, but she admitted she signed the affidavit. Both [Sagal's] mother and the notary, however, testified that they made sure [L.S.] read the contents of the document before signing it. [L.S.] was fifteen years old when she signed the affidavit.

Sagal was unable to effectively cross-examine L.S. at the rule 23B hearing because he first delayed questioning her, then she failed to appear for a subsequent hearing. She eventually appeared via

FaceTime, claiming that she was in Mexico. She then invoked her constitutional right against self-incrimination and refused to answer additional questions. However, the trial court observed that Sagal provided no evidence to corroborate the claims in L.S.'s affidavit, even those that should have been corroborated fairly easily, such as whether L.S. and M.P. are cousins.

¶17 K.P. likewise testified that she did not read her affidavit before signing it and that she believed "that she was merely signing an affidavit of [Sagal's] good character." K.P. testified "that she had never met M.P., she never communicated with M.P., M.P. never disclosed to her that M.P.'s testimony during [Sagal's] trial was false, and she did not know [L.S.]." She also testified that her name was spelled wrong in the affidavit. Additionally, due to the fact that the affidavit was signed after counsel withdrew from the case, Sagal's rule 23B counsel "acknowledged in open court that [Sagal] did not have a claim of ineffective assistance of counsel regarding [trial counsel's] failure to investigate [K.P.'s] claims."

¶18 The court concluded that Sagal's trial counsel did not perform deficiently by failing to investigate L.S.'s and K.P.'s testimonies. As to K.P., the court determined that the testimony was not relevant to the claim, because her affidavit was signed after trial counsel withdrew. As to L.S., the court determined that counsel "did not have a duty to investigate claims that he knew were false" as a result of Sagal admitting to him that he had sex with M.P. The court further determined that Sagal could not have been prejudiced by any failure to investigate L.S. because she recanted her testimony and because she was not a credible witness.

ISSUES AND STANDARDS OF REVIEW

¶19 Sagal first argues that the trial court's failure to conduct a colloquy with him regarding the specific rights he was waiving

by electing a bench trial constituted plain error and requires reversal.

> To obtain appellate relief from an alleged error that was not properly objected to, the appellant must show the following: (i) An error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined.

*State v. Casey*, 2003 UT 55, ¶ 41, 82 P.3d 1106 (quotation simplified).

¶20    Sagal further argues that he received ineffective assistance of counsel because his trial counsel failed to fully inform him of the rights he was waiving and because counsel failed to adequately investigate L.S.'s and K.P.'s potential testimonies. These claims were reviewed by the trial court on rule 23B remand. "We review the 23B court's factual findings for clear error and its legal conclusions for correctness." *State v. Kozlov*, 2012 UT App 114, ¶ 30, 276 P.3d 1207.

ANALYSIS

I. The Court Did Not Commit Plain Error by Failing to Conduct a Colloquy Regarding Sagal's Waiver of His Right to a Jury Trial.

¶21    Sagal asserts that the trial court committed plain error by failing to conduct a colloquy informing him of the rights he was waiving by electing a bench trial and confirming that he understood those rights. Although colloquies are "encourage[d]" because they may "help judges ascertain whether" a defendant's waiver is knowing, intelligent, and voluntary; help "ensur[e] the validity of a waiver"; and "allow for efficient and informed

appellate review," *State v. Hassan*, 2004 UT 99, ¶ 18, 108 P.3d 695, colloquies are ultimately "'a matter of prudence,' rather than constitutional mandate," *id.* ¶ 15 (quoting *United States v. Rodriguez*, 888 F.2d 519, 527 (7th Cir. 1989)); *see also State v. Bhag Singh*, 2011 UT App 396, ¶ 14, 267 P.3d 281 (explaining that a colloquy is not mandated for a defendant's waiver of a jury trial to be knowing, voluntary, and intelligent). Trial courts are "under no obligation to provide an exhaustive explanation of all the consequences of a jury waiver." *Hassan*, 2004 UT 99, ¶ 17. Rather, whether there is "an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." *Adams v. United States*, 317 U.S. 269, 278 (1942). We thus "look to the totality of the circumstances to determine whether a defendant validly waived his right to a jury trial." *Hassan*, 2004 UT 99, ¶ 14.[1]

¶22 "[U]nder a totality of the circumstances analysis, a defendant can validly waive a right to a jury trial even in the absence of a colloquy if other factors indicate that he knowingly, intelligently, and voluntarily waived the right." *Id.* ¶ 18. Here, prior to trial and while Sagal was present, counsel represented to the court, "I have discussed at length with Mr. Sagal, his right to a jury trial, the rights that he will be waiving should he elect to forgo his right to a jury trial and have it tried to the bench." Sagal raised no objection to this representation. Even assuming that counsel's representation was false, we can reverse on grounds of plain error only where that error should have been

---

1. Although we discern no reversible error in this case, we strongly encourage trial courts to engage in a meaningful colloquy directly with defendants when the right to a jury trial is waived. At least "'as a matter of prudence,'" trial courts should confirm that the defendant has understood and agrees with counsel's representations regarding any such waiver. *See State v. Hassan*, 2004 UT 99, ¶ 15, 108 P.3d 695 (quoting *United States v. Rodriguez*, 888 F.2d 519, 527 (7th Cir. 1989)).

obvious to the court. Given counsel's representation and Sagal's acquiescence, we cannot say that it would have been obvious to the court that Sagal's waiver was not knowing, intelligent, and voluntary. *See State v. Garteiz*, 688 P.2d 487, 488 (Utah 1984)[2] (per curiam) (upholding a waiver of jury trial by a non-native, non-English-speaker where counsel represented that he had discussed the defendant's right's with him and the court conducted a four-question colloquy but did not thoroughly discuss all the rights being waived); *Bhag Singh*, 2011 UT App 396, ¶ 14 (holding that under circumstances where a non-English-speaking defendant "had an interpreter while he consulted with his attorney about waiving his right to a jury trial and his attorney requested the bench trial in [the defendant's] presence" the trial court did not plainly err in failing to conduct a colloquy and that the defendant failed to establish that his waiver was not knowing, voluntary, and intelligent).

¶23 Sagal nevertheless asserts that under the circumstances of this case it was plain error for the trial court not to conduct a colloquy in light of his youth, inexperience, and foreign birth. While our supreme court has suggested that such a colloquy

---

2. Sagal points to Justice Durham's special concurrence in *Garteiz*, in which she "urge[d] trial courts to undertake a careful explanation of the nature of the right to a jury trial before accepting a defendant's waiver thereof." *State v. Garteiz*, 688 P.2d 487, 489 (Utah 1984) (per curiam) (Durham, J., concurring specially). This encouragement was repeated by the *Hassan* court when it encouraged "our judges, particularly in the circumstances [where a defendant has limited comprehension of English], to conduct a colloquy before granting a waiver." *Hassan*, 2004 UT 99, ¶ 18. However, as Justice Durham acknowledged in her concurrence, a lesser examination "comports with current law and standards." *See Garteiz*, 688 P.2d at 488 (Durham, J., concurring specially). This remains the case, as discussed above.

may be more important "in ensuring the validity of a waiver when a defendant has limited comprehension of the English language," such a colloquy is still not mandated. *See Hassan*, 2004 UT 99, ¶ 18. And we see no facts in the record here to indicate that Sagal actually had a limited comprehension of the English language. Although his first language is Spanish, he has lived in the United States since he was six years old, he did not use an interpreter at trial, he graduated from a Utah high school, and he works as a retail manager—all of which indicate that his grasp of the English language is not limited. In any event, this court has previously upheld waivers under similar circumstances, even where the defendant's comprehension of English was actually limited. *See Bhag Singh*, 2011 UT App 396, ¶ 14. Sagal's age and inexperience likewise do not mandate a colloquy. Presumably, many defendants who come before the courts of this state are inexperienced with the criminal justice system. Further and relatedly, Utah law presumes that "[a] minor 14 years of age and older is . . . capable of intelligently comprehending and waiving the minor's right to counsel." Utah R. Juv. P. 26(e). In short, none of the specific circumstances of this case were such that the trial court should have determined that a full colloquy was obviously necessary in order to ensure that Sagal's waiver of his right to a jury trial was knowing, voluntary, and intelligent.

¶24    Further, Sagal has failed to establish that he suffered any prejudice as a result of the court's failure to conduct a colloquy. Sagal's prejudice argument largely rests on his assertion that the denial of a jury trial is structural error with respect to which prejudice is presumed. *See State v. Cruz*, 2005 UT 45, ¶ 17, 122 P.3d 543 ("Structural errors are flaws in the framework within which the trial proceeds, rather than simply an error in the trial process itself." (quotation simplified)); *State v. Calvert*, 2017 UT App 212, ¶ 52, 407 P.3d 1098 ("The denial of the right to a jury trial is . . . structural error."). The State counters that unpreserved claims of structural error are nevertheless subject to

plain error review, including the requirement that the defendant demonstrate prejudice.[3]

¶25    Sagal's claims regarding whether he effectively waived his right to a jury trial were unpreserved and were therefore raised on grounds of plain error and ineffective assistance of counsel on appeal. Our supreme court, in *State v. Bond*, 2015 UT 88, 361 P.3d 104, extensively analyzed the question of whether unpreserved claims can be subject to heightened review standards such as the harmless beyond a reasonable doubt standard applicable to various federal constitutional errors and the presumed prejudice standard applicable to structural errors. *See id.* ¶¶ 36–47. The court concluded that "unpreserved federal constitutional claims are not subject to a heightened review standard." *Id.* ¶ 44. The court emphasized the importance of giving the trial court the first opportunity to rule on an issue. *See id.* ¶ 45. The court also pointed out the fact that ineffective assistance claims, which inherently concern an important constitutional right, always require proof of prejudice: "It would make little sense to require a defendant to prove prejudice under the circumstances of ineffective assistance and yet relieve him of that duty for other constitutional errors that could more easily have been raised during the trial." *Id.* ¶ 46. The court therefore concluded that the plain error test—including its prejudice prong—is applicable to alleged structural errors raised for the first time on appeal. *See id.* ¶¶ 36–47; *see also State v. Malaga*, 2006 UT App 103, ¶ 11, 132 P.3d 703 (holding that with respect to an

---

3. The State also argues that the acceptance of a waiver that is not knowing, voluntary, and intelligent does not amount to a structural error, asserting that there is a distinction between the erroneous acceptance of a waiver and the complete denial of the right to a jury trial. We need not reach this question, however, because we agree with the State that a defendant must prove prejudice even with respect to alleged structural errors when the defendant's challenge is unpreserved.

unpreserved claim raised on grounds of ineffective assistance of counsel, alleged structural errors do not alleviate the defendant's burden to demonstrate prejudice).

¶26   Sagal asserts generally that "[t]he error in this case was . . . prejudicial because of the conflicting evidence" and that "a reasonable likelihood exists that the jury would have reached a more favorable verdict." This generalized assertion falls far short of demonstrating "a reasonable likelihood of a more favorable outcome for the appellant" or undermining our confidence in the verdict. *See State v. Casey*, 2003 UT 55, ¶ 41, 82 P.3d 1106 (quotation simplified). As discussed below, the trial court, in considering prejudice in the ineffective assistance context on remand, determined, first, that Sagal had failed to demonstrate that a more favorable outcome was likely with a jury trial and, second, that as a result of his trust in his counsel, Sagal would still have waived a jury trial even if he had more fully understood his rights. We agree with the trial court's assessment, and Sagal's conclusory argument does nothing to convince us otherwise.

¶27   Because the trial court was not required to conduct a colloquy with Sagal regarding his right to a jury trial as a matter of course, and because the need for such a colloquy was not obvious under the totality of the circumstances presented here, the court did not plainly err in failing to conduct a colloquy. Further, Sagal has failed to demonstrate prejudice as required by the standard of review for plain error. Thus, we reject Sagal's plain error argument.

II. Counsel's Failure to More Fully Inform Sagal Regarding the
Rights He Was Waiving by Electing a Bench Trial Did Not Rise
to the Level of Ineffective Assistance of Counsel.

¶28   Sagal next asserts that his convictions should be reversed on the ground the he received ineffective assistance of counsel due to his counsel's failure to inform him thoroughly of every

right he was waiving by electing a bench trial in lieu of a jury trial. Sagal maintains that his counsel's failure to advise him specifically "that a jury trial conviction would require a unanimous decision of all the jurors in contrast to the judge alone determining his guilt or innocence" and that he "had the right to assist in selecting a jury" constituted ineffective assistance. Sagal asserts that in considering the totality of the circumstances—in particular, his youth and inexperience, his unfamiliarity with the criminal justice system, the fact that English is his second language, and his implicit trust of trial counsel due to his cultural background—counsel's failures rendered his waiver not knowing, voluntary, and intelligent and that counsel's incomplete advice regarding his rights therefore constituted ineffective assistance of counsel.

¶29    The rule 23B court determined that advising Sagal to waive his right to a jury trial was a legitimate tactical decision. However, Sagal points out that his argument does not concern whether counsel performed deficiently by advising him to waive the jury trial; rather, he asserts that counsel performed deficiently by failing to fully advise him of the rights he would be waiving should he forgo the jury trial. He asserts that "there is a lack of any conceivable tactical basis for counsel's actions of failing to thoroughly advise Sagal of the rights associated with the constitutional right to a jury trial prior to seeking a waiver."

¶30    Sagal cannot demonstrate that he was prejudiced by counsel's failure to fully inform him of the rights he was waiving. As the trial court pointed out in its findings, there were numerous tactical reasons for counsel to advise Sagal to forgo a jury trial in favor of a bench trial. Criminal defendants rely on the expertise of their attorneys to assess the pros and cons of a jury trial. Where trial counsel, having weighed various strategies and considered all the rights a defendant would be waiving, has advised a client that the risks of a jury trial outweigh the benefits, the likelihood that a thorough listing of the rights waived would result in the defendant going against counsel's

advice is small. Indeed, the trial court on remand found that this was the case with Sagal. The trial court observed, "[Sagal] testified that because he was taught not to question his elders and that he had no experience with criminal law, he 'completely trusted' [trial counsel]." The court further found, "[E]ven if [counsel] had thoroughly and exhaustively explained all of the rights associated with a jury trial, given [Sagal's] trust in [counsel], [he] would have still waived his right to a jury trial to proceed with the bench trial." The court further determined that "[Sagal] has failed to demonstrate that a jury trial would have yielded a more favorable result."

¶31    Sagal has not challenged the trial court's findings on appeal but, instead, reasserts his argument that this court must presume prejudice because the failure of trial counsel to inform Sagal of his rights was structural error. As we have previously rejected this argument, we accept the trial court's findings that Sagal would have elected a bench trial even if he had been fully informed of the rights he was waiving. *See State v. Kozlov*, 2012 UT App 114, ¶ 30, 276 P.3d 1207 ("We review the 23B court's factual findings for clear error . . . ."). Accordingly, we agree with the trial court that Sagal has failed to demonstrate prejudice.

### III. Sagal Has Abandoned His Claim of Ineffective Assistance Relating to the Failure to Investigate L.S.'s and K.P.'s Testimonies.

¶32    On appeal, Sagal initially asserted that counsel's failure to investigate L.S. and K.P. as potential witnesses constituted ineffective assistance of counsel. Following rule 23B remand, both parties were asked to file supplemental briefs addressing the court's ruling. Sagal's supplemental brief addressed only his argument regarding whether trial counsel's failure to fully inform him of his rights constituted ineffective assistance. Sagal's brief did not further address his claims regarding the investigation of L.S. and K.P.

¶33 "Issues not briefed by an appellant are deemed waived and abandoned." *Langeland v. Monarch Motors, Inc.*, 952 P.2d 1058, 1062 n.5 (Utah 1998) (quotation simplified). Sagal conceded in the rule 23B proceedings that counsel was not ineffective for failing to investigate K.P., because her affidavit was procured after counsel withdrew. In his supplemental brief, he does not dispute the trial court's ruling that he could not establish ineffective assistance with respect to L.S.'s affidavit. Further, he did not dispute the State's assertion that he had abandoned this claim. Therefore, we do not further address Sagal's ineffective assistance arguments with respect to counsel's alleged failure to investigate.

## CONCLUSION

¶34 Sagal has failed to establish that the trial court's failure to conduct a colloquy regarding the rights he was waiving in forgoing a jury trial constituted plain error. He has also failed to establish that counsel's failure to more fully inform him of those rights constituted ineffective assistance of counsel. Finally, we do not address his ineffective assistance argument regarding counsel's alleged failure to investigate because Sagal abandoned this argument following the rule 23B remand. Accordingly, we affirm Sagal's convictions.

———————